THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>           )<br>           Plaintiff, )<br>           )<br>      v. )<br>           )<br>LUKE REIMER, et al., )<br>           )<br>           Defendants. )<br>_____ ) | NO.  CR09-402 RAJ<br><br>DEFENDANT LUKE REIMER'S<br>SENTENCING MEMORANDUM<br><br><br>Sentencing Hearing: November 30, 2010, 10:00 am |

## I. INTRODUCTION

On September 2, 2010, Luke Reimer entered a guilty plea to Conspiracy to Commit Wire Fraud as charged in count one of the indictment in this case in violation of 18 U.S.C. §§ 1349 and 2.

Sentencing is scheduled for November 30, 2010, at 10:00 a.m. before The Honorable Richard A. Jones, United States District Judge.  The government is represented by Aravind Swaminathan, Assistant United States Attorney.  Mr. Reimer is represented by Walter Palmer.  The probation officer is Diane E. McLuen.

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 1

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746

The following exhibits are attached to this memorandum:

1. Mr. Reimer's letter to the Court.
2. Letters to the Court from members of Mr. Reimer's family.
3. Letters to the Court from members of the religious community.
4. Letters to the Court from Mr. Reimer's friends.
5. Letter to the Court from Mr. Reimer's former employer.

Mr. Reimer's father, Michael J. Reimer Ph.D., and mother will be at the sentencing hearing along with a number of other family members and friends. Dr. Reimer would like to address the Court before sentence is imposed.

## II. DEFENDANT'S SENTENCE RECOMMENDATION

For the reasons stated herein, Mr. Reimer respectfully requests that this Court impose a sentence of six months home confinement followed by five years supervised release together with the conditions of supervision set forth in the proposed judgment submitted by the United States Probation Office.

The basis for this recommendation is set forth in this memorandum in section VIII beginning on page 7.

## III. FACTS

In the fall of 2005, Luke Reimer's cousin, Mark Ashmore, offered Mr. Reimer a job working for Ashmore Capital, one of Mr. Ashmore's businesses. Ashmore Capital, like two other companies owned by Mr. Ashmore, was involved in the purchase and sale of residential real estate.

At the time of the job offer, Mr. Reimer and his wife, Hannah, were living in Chicago, Illinois where they were both working full time but struggling financially. In addition, Mr. Reimer had become frustrated in his job as a physical education teacher. As a result, Mr. Reimer

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 2

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746

decided to look for new employment opportunities.[1]

Mr. Reimer contacted Mr. Ashmore and told him that he was looking for a change and a chance to improve his financial situation. In the fall of 2005, Mr. Ashmore invited Mr. and Mrs. Reimer to visit Mr. Ashmore and his wife in Bellevue, Washington. During the visit, it appeared to Mr. Reimer that Mr. Ashmore was doing well in the real estate business. Mr. Ashmore asked Mr. Reimer if he would be interested in relocating and learning the real estate business by working for Mr. Ashmore. Mr. Reimer saw this as the opportunity that he had been looking for and readily accepted the offer.

Mr. Reimer and his wife moved to the Seattle area and, in January, 2006, Mr. Reimer began working for Mr. Ashmore. At first, Mr. Reimer worked remodeling homes that Mr. Ashmore had purchased for re-sale. Later, at Mr. Ashmore's direction, Mr. Reimer became involved in the purchase and sale of residential real estate. Mr. Ashmore instructed Mr. Reimer to fill out real estate loan applications using inflated income information and false statements concerning his intended use of the property as a residence. Mr. Reimer acted as a buyer of five residential properties at Mr. Ashmore's direction.

In addition, Mr. Ashmore asked Mr. Reimer to find individuals to act as "straw buyers" of residential real estate. The "straw buyer" would pose as a purchaser of a residential property and provide false information concerning income in order to obtain financing to acquire the property.

Mr. Reimer was concerned about providing false information to obtain financing in order to acquire the properties and questioned Mr. Ashmore about this practice. Mr. Ashmore assured Mr. Reimer that it was common to misrepresent income and intended use of the property when applying for a residential mortgage. In addition, Mr. Ashmore said that since the property would be quickly resold at a higher price, no one would be harmed. Finally, Mr. Ashmore stated that

---

[1] See Mr. Reimer's letter to the Court attached as exhibit 1.

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 3

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746

since there was nothing to prevent a buyer from changing his or her mind after the sale, it really wasn't a lie to state that the property would be used as a primary residence when applying for a mortgage.

By the summer of 2007, approximately 18 months after he began working for Mr. Ashmore, Mr. Reimer decided that he could no longer be involved with Mr. Ashmore in the real estate business. After much thought and discussion with his family, Mr. Reimer decided that regardless of how Mr. Ashmore had justified his business practices, it was wrong and likely illegal to be making false statements to banks and lending institutions.

Approximately six months later, in January, 2008, Mr. Reimer was contacted by FBI agents concerning his activities while working for Mr. Ashmore. Mr. Reimer immediately began cooperating with the agents by giving them a complete and accurate account of what he had done while employed by Mr. Ashmore. He also assisted in their investigation by answering questions about other individuals involved with Mr. Ashmore and providing detailed information about Mr. Ashmore's real estate business.

After severing all ties with Mr. Ashmore, Mr. Reimer found employment at Macrina Bakery, a large volume wholesale bakery that also operates several retail bakeries and cafes. As a bond condition, Mr. Reimer was required to notify his employer of the indictment in this case. As a result, he was terminated. He has been unable to obtain employment since then.

### IV. APPLICABLE LAW

In <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court excised the provision of the Sentencing Reform Act that made the guidelines mandatory, 18 U.S.C. § 3553(b), and held the district courts must still consider the guidelines, 18 U.S.C. § 3553(a)(4) and (5), but only as one among several factors listed in § 3553(a).

The five factors that are to be considered in addition to the guidelines are:

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 4

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) [consideration of advisory guidelines]

(5) [consideration of guideline policy statements]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Not only does 18 U.S.C. § 3553(a)(1) *require* the Court to consider the history and circumstances of the defendant, but 18 U.S.C. § 3661 provides that "no limitation shall be placed on the information concerning the background, character, and conduct of the defendant which a court may receive and consider for the purposes of imposing an appropriate sentence."

Furthermore, Section 3553(a) requires the Court to **"impose a sentence sufficient, but not greater than necessary."**

## V. CONSIDERATION OF ADVISORY GUIDELINES

In deciding what constitutes a "sufficient, but not greater than necessary" sentence in this case, it is not just the guideline range the Court should consider, but also examples of cases

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 5

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746

under the stricter mandatory scheme which permitted the courts to go outside the guideline range to mitigate a sentence. Even before Booker, the guidelines "place[d] essentially no limit on the number of potential factors that may warrant a [downward] departure." Koon v. United States, 518 U.S. at 106; see also United States v. Coleman, 188 F.3d 354, 358 (6th Cir. 1999) (*en banc*) (there are a "potentially infinite number of factors which may warrant a departure.")

Furthermore, pre Booker cases recognized the authority of courts to sentence below the guidelines based on a combination of factors, none of which standing alone would have justified a departure. United States v. Hines, 26 F.3d 1469 (9th Cir. 1994), United States v. Cook, 938 F.2d 149, 153 (9th Cir. 1991).

After Booker, this Court is no longer required to measure this case against the rigid requirements of the above or similar departure grounds. The fact that a single element or aspect of any of these grounds is present in this case is something worthy of consideration in mitigating the advisory guideline range or in achieving the purposes of the other required goals of sentencing as outlined in 18 U.S.C. § 3553(a).

In the subsequent case of Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) the Supreme Court expanded on Booker by stating that a sentencing court need not find "extraordinary" circumstances to justify a sentence outside the guideline range. Gall, *id.* 128 S.Ct. at p. 595. In addition, the Supreme Court pointed out that a sentencing court may not presume that the guideline range is reasonable. Gall, *id.,* 128 S.Ct. at p. 596-597.

## VI. ADVISORY GUIDELINE CALCULATIONS

The probation office has determined that the advisory guideline range is 33 to 41 months based upon a total offense level of 20. In calculating the offense level, the probation office used a loss figure of $1,819,207. This figure was provided by the government and is based on calculations by the FBI.

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 6

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746

Mr. Reimer agrees that the total offense level is 20. However, he is unable to determine if the loss figure is accurate. The government has provided documents to the defense prepared by the FBI upon which the loss figure relied upon by probation is based. However, without further information concerning the loss calculation, Mr. Reimer is unable to independently verify the loss figure used by probation.

Mr. Reimer does agree that the total loss is more than $1,000,000 but less than $2,500,000. Pursuant to U.S.S.G. § 2B1.1(b)(1)(I) that range of loss adds 16 levels to the base offense level of seven. Deducting three points for acceptance of responsibility results in a total offense level of 20. Since Mr. Reimer has no criminal history the resulting guideline range is 33 - 41 months.

## VIII. BASIS OF RECOMMENDATION

Mr. Reimer recognizes that a sentence of six months home confinement may seem unreasonably lenient and unjustified in a case such as this. However, the defense respectfully submits that the recommended sentence is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2) for the following reasons:

1.  <u>Mr. Reimer's extraordinary cooperation.</u>

Mr. Reimer began cooperating with the government when first contacted by the FBI in January, 2008. During that initial interview he provided a complete and accurate account of his involvement with Mr. Ashmore in the fraudulent real estate transactions in this case. He also provided information about other persons involved with Mr. Ashmore and details concerning the nature and scope of the charged conspiracy.

Not only did Mr. Reimer assist in the government investigation by providing details of his actions and the actions of others, he also testified as a government witness in Mr. Ashmore's trial before this Court. He met with government counsel several times to prepare for this

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 7

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746

testimony.

While the plea agreement obligated Mr. Reimer to cooperate, it did not contain any representations concerning a motion to allow the Court to sentence him below the guideline range.

2.  The circumstances of Mr. Reimer becoming involved in the conspiracy.

Mr. Reimer became involved with his cousin Mark Ashmore for several reasons. As he points out in his letter to the Court attached to this memorandum, he and his wife were struggling financially. In addition, Mr. Reimer's job as a physical education teacher offered little in the way of opportunities for advancement. As a result, Mr. Reimer saw Mr. Ashmore's employment offer as an opportunity that he couldn't pass up. He never suspected that his cousin would lead him into committing fraud.

Mr. Ashmore held himself out as an experienced and successful real estate entrepreneur and maintained a lifestyle consistent with a person of substantial means. Given Mr. Reimer's difficult financial situation, it is understandable why he accepted his cousin's offer to learn the real estate business.

After working for Mr. Ashmore for a short time he expressed concerns about the way business was conducted. Mr. Ashmore rationalized and justified his business practices by explaining that this was the way the real estate business was done and all the participants, including the banks and mortgage companies, as well as the escrow and loan officers, knew what was going on. He also explained that because of the rapid appreciation in real estate values, no one would ever get hurt financially.

Mr. Reimer was completely unsophisticated in the business world and never suspected that a family member would lead him into criminal activity. Therefore, it is not surprising that an educated individual with no criminal record and an exemplary reputation could become taken

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 8

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746

in by someone like Mr. Ashmore.

//

### 3. Mr. Reimer's voluntary withdrawal from the conspiracy.

In the summer of 2007, approximately 18 months after he started working for Mr. Ashmore and approximately six months before he was contacted by the FBI, Mr. Reimer told his cousin that he could no longer be involved with him in the real estate business. At that time Mr. Reimer was not aware that a criminal investigation into Mr. Ashmore's activities had begun.

Mr. Reimer made the decision to part ways with his cousin because he no longer felt he could compromise his personal values even though Mr. Ashmore continued to assure him that what they were doing was standard in the real estate business and not illegal. However, Mr. Reimer simply felt that what he was doing was morally wrong and he no longer could engage in conduct that was inconsistent with his own standards. He severed all ties with Mr. Ashmore and found employment elsewhere.

### 4. Mr. Reimer's conduct since withdrawing from the conspiracy.

Given Mr. Reimer's personal history, it is not surprising that he has behaved in an exemplary manner since terminating his relationship with Mr. Ashmore. He found employment at Macrina Bakery where he was recognized as a responsible and valued employee. A letter from one of the owners of this business is attached as exhibit 5. As stated in the letter, his employer thinks highly of Mr. Reimer and is willing to rehire him.

Mr. Reimer has also taken the difficult steps of contacting the people that he brought into Mr. Ashmore's scheme to make amends and take responsibility for his actions. This has been very difficult but something Mr. Reimer felt he must do.

Finally, in addition to devoting himself to caring for his wife and newborn son, he has used his time to develop the skills necessary to obtain employment in the technology field. He

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 9

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746

takes care of his son when his wife is at work and does as much as he can to take care of the household duties as well.

5. Mr. Reimer's personal history.

As the letters attached to this report indicate, Mr. Reimer is a caring, personable, and responsible person who has an unblemished past. His personal history is defined by service to others and devotion to his family and faith. He has been asset to every community he has been a part of. He is held in high regard by everyone he has come in contact with, whether as a student, a church member, an employee, or a friend.

Throughout his life he has maintained the highest personal and moral standards. His personal history indicates that his conduct in this case is truly an aberration. There should be no doubt that he will never be involved in the criminal justice system again.

## IX. CONCLUSION

Mr. Reimer respectfully submits that a sentence of six months home confinement in addition to those conditions of supervised release recommended by the probation office is sufficient but not greater than necessary to comply with the purposes set forth in 18 United States Code Section 3553(a)(2).

In Gall v. United States, the Supreme Court approved a sentence of 36 months probation in a case involving the distribution of ecstasy where the bottom end of the guideline range was 30 months. In that the case, the Court found that the defendant's withdrawal from the conspiracy, his conduct after he withdrew, and his lack of recent criminal history made a probationary sentence reasonable. Gall, *id*, 128 S.Ct. at p. 600-602.

The Court rejected the government's concern that a sentence of probation did not promote respect for the law by pointing out that seven of the eight defendants were sentenced to significant prison terms. Gall, *id*, 128 S.Ct. at p. 599.

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 10

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746

Finally, the Court stated that the district court necessarily " . . . gave significant weight and consideration to the need to avoid unwarranted disparities" in imposing a probationary sentence by correctly and carefully reviewing the guideline range. <u>Gall</u>, *id*, 128 S.Ct. at p. 599.

The factors in this case which Mr. Reimer relies upon in recommending a sentence of six months home confinement are strikingly similar to the facts relied upon the district court in <u>Gall</u> in imposing a sentence of probation. The Supreme Court found that sentence reasonable. Mr. Reimer respectfully submits the sentence he is recommending is also reasonable.

Respectfully submitted this 23nd day of November, 2010.

s/
WALTER G. PALMER
Attorney for Luke Reimer
Washington State Bar Number 4756
1111 3rd Avenue, Suite 2220
Seattle, WA 98101-3207
Telephone: 206/442-9232
Facsimile: 206/682-3746
E-Mail: walter@wgpalmerlaw.com

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 11

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746

CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney of record for the plaintiff.

In addition, I certify that on November 23, 2010, I e-mailed the foregoing to Diane E. McLuen, United States Probation Officer, diane_mcluen@wawp.uscourts.gov.

s/_____
Walter G. Palmer
Walter G. Palmer Inc. P.S.
1111 3rd Avenue, Suite 2220
Seattle, WA 98101-3207
Telephone: 206/442-9232
Facsimile: 206/682-3746
E-Mail: walter@wgpalmerlaw.com

DEFENDANT LUKE REIMER'S SENTENCING
MEMORANDUM - CR009-402 RAJ - p. 12

Walter G. Palmer Inc. P.S.
1111 Third Avenue, #2220
Seattle, WA 98101-3207
(206) 442-9232
Fax: (206) 682-3746