The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> LUKE REIMER, <br><br> Defendant. | NO.  CR09-00402RAJ <br><br> UNITED STATES' SENTENCING MEMORANDUM AND MOTION PURSUANT TO USSG 5K1.1 |

**A.     INTRODUCTION**

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Nicholas W. Brown and Aravind Swamination, Assistant United States Attorneys for said District, submits this sentencing memorandum.

Sentencing is scheduled for November 29, 2010.

On September 12, 2010, the Defendant entered a plea of guilty to the following charge: Conspiracy to Commit Wire Fraud, as charged in Count 1 of the Indictment, in violation of Title 18, United States Code, Sections 1349 and 2.  As part of the Plea Agreement, the United States Attorney's Office for the Western District of Washington agreed to move to dismiss the remaining counts in the Indictment at the time of

U.S. SENTENCING MEMO - 1
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

sentencing.

The offense charged in Count 1 carries a maximum penalty of: imprisonment for up to thirty (30) years; fine of up to two hundred and fifty thousand dollars ($250,000.00); a period of supervision following release from prison of up to three (3) years; and a one hundred dollar ($100.00) special assessment.

**B.    THE OFFENSE CONDUCT**

This Court presided over a week long trial of co-defendant Mark Ashmore, during which the conspiracy, and the co-conspirators various roles, were gone into in some depth. Indeed, most of the Defendants including Mr. Reimer, testified during the trial.

The scheme was a classic "credit investor" scam that used the personal and financial information of others to fraudulently gain control of various properties. Mr. Ashmore would identify residential real property for sale. He would then contact the seller of the subject properties, and would generally offer to purchase the property at well above the asking price. As part of the propose sale agreement, the seller of the subject properties sign an "upgrade agreement," assigning any proceeds over the original asking price to a company owned or controlled by Mr. Ashmore.

The Defendant and his co-conspirators would recruit and pay individuals to pose as buyers ("straw buyers") for the subject properties, often promising to pay them substantial sums of money. In return for their fee, the straw buyers would allow their identities and credit information to be used in mortgage loan applications. The applications were submitted to financial institutions and mortgage lenders, and represented the straw buyer as the true buyer of the selected properties, and the individual responsible for the loan. The money obtained via the fraudulent loans was the diverted to Mr. Ashmore and then on to the other conspirators, and some was used to secure residential real property for Defendant's and other members of the conspiracy's use.

From approximately January 2006 through October 2007, the Defendant worked with his Mr. Ashmore and with Mr. Ashmore's numerous business entities during the course of the conspiracy. It was part of Defendant's intent to gain control of single

U.S. SENTENCING MEMO - 2
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

family residences on behalf of himself and his co-conspirators for investment purposes. The Defendant knew he was unable to legitimately obtain financing to acquire these properties and pay for holding costs and/or remodeling work on the properties using his true financial and credit information. Accordingly, he knowingly and intentionally provided false information on loan documents to help accomplish the goals of the conspiracy.

The Defendant both purchased homes in his own name and recruited others to act as straw buyers. The Defendant purchased five homes in his own name, all located within the State of Washington, resulted in a loss of $835,667. In addition to the properties he personally purchased, the Defendant recruited his college friend and his wife, L. And A. Abernathy, to pose as straw buyers. The Abernathy's purchased three properties in Washington and two properties in Nevada. These homes resulted in a loss of $717,540. The Defendant also recruited his two brothers-in-law, to purchase properties in Nevada as straw buyers. The total loss associated with these properties is $266,000.

This fraudulent scheme was orchestrated to purchase over forty different residential properties in Washington and Nevada. A majority of the properties were often "flipped" in subsequent transaction. This means that members of the conspiracy would recruit another straw buyer to purchase the same real property, typically at a significantly inflated price over the prior purchase agreement between a member of the conspiracy and the original seller.

The conspirators would also often make, or cause others to make, the payments on the mortgage loans obtained as part of the conspiracy, in an attempt to maintain the loans until the properties could be sold again, oftentimes in another flip to another straw buyer. However, in the end, the conspirators ultimately failed to make payments on the loans, and the properties generally went into foreclosure or were sold in short sales, causing the financial institutions and mortgage lenders to suffer substantial losses.

C.   **Presentence Report and Advisory Guidelines Range**

The Presentence Report accurately summarizes the offense conduct in this case

U.S. SENTENCING MEMO - 3
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

and correctly calculates the offense level, criminal history category, and resulting advisory Sentencing Guidelines range. The Defendant's base offense level is 7, pursuant to U.S.S.G. § 2B1.1. A 16-level upward adjustment based on loss amount also applies, pursuant to U.S.S.G. § 2B1.1(b)(1)(I), as the loss amount is greater than $1,000,000, but less than $2,500,000.

Pursuant to the plea agreement, the parties agreed that neither party would seek an adjustment based upon the role the Defendant played in committing the offense pursuant to U.S.S.G. §§ 3B1.1 or 3B1.2. The Defendant's role in this case is neither aggravating or mitigating. Mr. Reimer played an important role in helping to execute this scheme, but he acted largely at the direction of his co-defendant Mr. Ashmore, who controlled most aspects of the conspiracy. Moreover, while the Defendant was involved with multiple properties used in this scheme, the vast majority of the proceeds went to, and were controlled by, Mr. Ashmore.

The parties are free to argue the application of any other provisions of the United States Sentencing Guidelines, but the government does not believe any additional provisions apply.

The Presentence Report correctly accounts for deductions to the Base Offense Level for acceptance of responsibility. The Defendant has assisted the United States by timely notifying the authorities of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently. The Defendant's Total Offense Level should be decreased by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b).

The Total Offense Level is therefore a level 20. The government agrees that the defendant has no prior criminal history and is therefore in a criminal history category of I. The corresponding guideline range is 33-41 months.

**D.    COOPERATION.**

The United States respectfully requests the Court depart from the United States Sentencing Guidelines (USSG) range, pursuant to Section 5K1.1, due to the substantial

U.S. SENTENCING MEMO - 4
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

assistance provided by the Defendant. The terms of the plea agreement contained a cooperation provision. Specifically, Mr. Reimer agreed that he would cooperate completely and truthfully with law enforcement authorities in the investigation and prosecution of other individuals involved in criminal activity. Such cooperation would include, but not be limited to, complete and truthful statements to law enforcement officers, as well as complete and truthful testimony, if called as a witness before a grand jury, or at any state or federal trial, retrial, or other judicial proceedings. The Defendant acknowledged that his obligation to cooperate would continue after he entered a guilty plea and sentence had been imposed, no matter what sentence he received, and the Defendant's failure to continue his cooperation would constitute a breach of the plea agreement.

Mr. Reimer was cooperative with the government since being first contact by law enforcement in January 2008. At the time, he readily admitted his involvement in this scheme and provided a complete account of his participation. He subsequently entered a plea of guilty to the conspiracy and proffered to the government. During the proffer, he admitted to his role in the offense, provided additional details and assisted the government in preparing for trial against his cousin and co-defendant Mr. Ashmore. He ultimately testified at trial, and the Court of course had an opportunity to evaluate his testimony and its impact. In the government's estimation, Mr. Reimer's testimony, along with that of his co-defendants, was helpful in securing Mr. Ashmore's conviction.

E.   **RESTITUTION**.

As part of the plea agreement, Mr. Reimer agreed to make restitution to any financial institution harmed by his participation in the charged conspiracy, in an amount to be determined at the time of sentencing. The government calculates the Defendant's restitution amount to be $1,817,207. His restitution obligation shall be joint and several with the three co-defendants.

F.   **RECOMMENDATION AND JUSTIFICATION**.

The government respectfully recommends a custodial sentence of 18 months, to be

U.S. SENTENCING MEMO - 5
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1 followed by three years of supervised release.  As set forth in the Supreme Court's
2 decision in *United States v. Booker*, 453 U.S. 220, 246 (2005), this Court is required to
3 consider the sentencing range calculated under the United States Sentencing Guidelines,
4 together with the other factors set forth in Title 18, United States Code, Section 3553(a),
5 including: (1) the nature and circumstances of the offense and the history and
6 characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the
7 seriousness of the offense, to promote respect for the law, and to provide just punishment
8 for the offense, (b) to afford adequate deterrence to criminal conduct, (c) to protect the
9 public from further crimes of the defendant, and (d) to provide the defendant with
10 educational and vocational training, medical care, or other correctional treatment in the
11 most effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and
12 the sentencing range established for the offense as set forth in the guidelines; (5) any
13 pertinent policy statement; (6) the need to avoid unwarranted sentence disparity among
14 defendants involved in similar conduct who have similar records; (7) the need to provide
15 restitution to victims.

16       The nature and circumstances of Defendant's offense, as well as his personal history and characteristics, support a 18-month term of imprisonment.  First and foremost, the offense the Defendant participated in was an incredibly serious crime.  The impact of this credit investor scheme on the mortgage lending industry cannot be overstated.  Many of the lenders involved in this particular scheme have gone out of business.  This includes Pierce Commercial Bank in Tacoma, Washington, which was closed on November 5, 2010.  Fraud such as this is partially responsible for the overall downturn in the economy and has had a ripple effect on both individuals and businesses alike.

24       Moreover, the Defendant was personally responsible for using fraudulent loans to purchase numerous properties himself, as well as recruiting his friends and family into the scheme as straw buyers.  While the straw buyers are responsible for their own actions, Mr. Reimer bares the blame for bringing them into the scheme and helping to create the resulting negative financial consequences.

The government's recommended sentence is well below the recommended guideline range, to account for his acceptance of responsibility, cooperation, and personal circumstances. Mr. Reimer has always been forthcoming about his involvement in this scheme and cooperative with the government. Moreover, given his lack of criminal history, contrition, and family support, the government believes that he is unlikely to re-offend. On balance, the government concurs with Probation that a sentence of 18 months is sufficient, but not greater than necessary, to satisfy the goals of sentencing.

**G.   CONCLUSION**

For the reasons set forth above, the government respectfully recommends a sentence of 18 months, to be followed by three years of supervised release.

Respectfully submitted this 23rd day of November, 2010.

Respectfully submitted,

JENNY A. DURKAN
United States Attorney

  /s Nicholas Brown
NICOLAS BROWN
ARAVIND SWAMINATHAN
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Ste. 5220
Seattle, Washington 98101
Facsimile: 206-553-0755
Phone: 206-553-1565
E-mail: nicholas.brown@usdoj.gov

U.S. SENTENCING MEMO - 7
(U.S. v. Ashmore, et. al., CR09-0402RAJ)

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970